[Crim. No. 1780. First Appellate District, Division Two.—March 7, 1934.]

THE PEOPLE, Respondent, v. RAFAEL JARAMILLO, Appellant.

Albert J. McGuire for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

NOURSE, P. J.—The defendant was tried before a jury on an information charging rape with force and violence. The jury found a verdict of guilty as charged and from the judgment and the order denying a new trial the defendant has appealed on a typewritten record.

The prosecutrix was an unmarried female over the age of consent. She was born in Mexico, but had resided in the United States about six years. The defendant was also a native of Mexico, but the time of his residence in this country was not shown. For the facts of the occurrence the state relied entirely upon the testimony of the prosecutrix. This testimony is so contradictory in some respects and so fantastic and improbable in others that it is difficult to prepare a simple statement of the facts without comment or explanation.

As we understand her testimony the prosecutrix went with her father to defendant's home for the purpose of receiving treatments for sinus trouble. After her father left she removed all her clothes and permitted the defendant to massage her body with hot towels and an alcohol rub. Two days later she returned for the same treatment and permitted the defendant to love and caress her. He then told her that sexual intercourse would aid in the cure and

this was had over her feeble protest. After this was accomplished she remained with the defendant for about thirty minutes. Two days later she returned for more treatments for the sinus trouble—consisting of hot towels, alcohol rubs and intercourse. On this occasion she took her mother with her and the two had lunch with the defendant. The prosecutrix remained with the defendant during the whole afternoon and then took him to her home, where he had dinner with her family and where he remained until late in the evening. On the following morning she went again to defendant's apartment and left with him a photograph of herself which, she said, was intended for her music teacher. She accepted from him presents of a guitar, articles of jewelry, two pairs of silk pajamas, and a key to his apartment. She accompanied him to dinner, followed by a trip to the beach. Early the following morning she let herself into defendant's apartment with the key he had given her and remained with him all that day. She received the same treatments as theretofore and, late in the afternoon, permitted the defendant to give her a hot bath in his bathtub. Her father called for her at about 6 P. M., and the defendant explained to him that it would endanger her cold to go out after the hot bath and it was arranged that her sister would come and sleep with her in defendant's apartment while he went home with her father and slept in her bed. On the following day she told some of her experiences to a friend, who insisted that she inform her mother. This was her first complaint or outcry.

Her story of resistance to the first attack is simply that, about an hour before it occurred, the defendant had given her something to drink consisting of egg, cinnamon and bitters; that she felt weak following the massage; that she tried to push him away; and that she "told him to keep away please. I did not come for this reason; I come for your treatments." To this she testified the defendant replied: "I love you very much and I will marry you after."

The judgment and order must be reversed for three reasons — the failure of the evidence to prove the offense charged; the error in the admission of the testimony of the policewoman; the refusal of the instruction covering the subsequent conduct of the prosecutrix.

■ Section 261 of the Penal Code defines rape under six subdivisions. The appellant was charged under the third—where resistance is overcome by force or violence. Evidence was offered which might have supported a conviction under the fourth subdivision of the section, or under section 268 covering seduction under promise of marriage. Some of these elements were referred to by the district attorney in his argument to the jury and the respondent now relies upon them to support the judgment, but a sufficient answer is that the appellant was only summoned to defend the charge laid in the information.

■ A policewoman was called by the state and was permitted to testify, over appellant's objection, that, following the arrest, she took the prosecutrix and a Spanish interpreter to appellant's cell and had the interpreter read to the appellant in Spanish an unsworn written statement made by the prosecutrix in English and that, after the reading, the interpreter told her that the appellant admitted having had relations with the girl. This written statement of the prosecutrix was then read to the jury, but was not admitted in evidence. The hearsay rule was violated in every particular. If this was an accusatory statement the witness did not know whether the appellant admitted it, or denied it, or stood mute. The prejudice is emphasized by the fact that the interpreter, when called by the state, denied that the appellant made the answer which the former witness said the interpreter told her he had made. On the other hand, the only competent evidence of appellant's conduct at the time came from the interpreter, who testified that the appellant turned to the girl and said in the Spanish language: "Now you know this is all wrong. I promised to marry you around the first of the year. . . . " Neither the written statement nor the testimony of the policewoman was admissible for any purpose. (*People* v. *Lapara*, 181 Cal. 66, 71 [183 Pac. 545]; *People* v. *Goltra*, 115 Cal. App. 539, 550 [2 Pac. (2d) 35].)

■ The appellant requested an instruction reading: "The jury are instructed that it is proper for you to consider the conduct of the prosecuting witness toward the defendant after the alleged commission of the crime complained of. You may consider whether or not, subsequent to such time, she treated him with scorn and contempt, or

whether the relations were courteous and friendly, and if you find from the evidence in this case that, at a time subsequent to the alleged commission of the crime charged against the defendant, the prosecuting witness voluntarily called at his place of business at divers times, exchanged gifts with the defendant, went to public places with the defendant, and assisted him in his business, you may take these facts into account in determining the probability or improbability of the commission of the crime."

The instruction should have been given. The charge was that the act had been committed with force and violence. The testimony of the prosecutrix was to be viewed in the light of what commonly occurs under circumstances of that kind. If a woman is outraged against her consent and with force and violence she would not ordinarily invite her traducer to her home to have dinner with her mother and sister nor return day after day to his home where similar acts were committed. The defendant in a criminal case is entitled not only to the presumption of innocence, but to the inferences which may be reasonably drawn from the circumstances. The evidence of the subsequent conduct of the prosecutrix should have been given to the jury with this instruction so that such inferences might have been drawn covering the element of force and violence charged in the information. A similar instruction was approved in *Clokey* v. *State*, 182 Ind. 589 [107 N. E. 273].

The judgment and order are reversed and the appellant is remanded for a new trial.

Sturtevant, J., and Spence, J., concurred.